UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| ROBERT FRIEND, <br><br> Plaintiff, <br><br> v. <br><br> JEFF SIEGEL, et al., <br><br> Defendants. | Case No. 3:24-CV-69-CCB-SJF |

## **OPINION AND ORDER**

Before the Court is Defendants Elkhart County Sheriff Jeff Siegel ("Sheriff Siegel"), Elkhart County Sheriff's Office ("ECSO"), Elkhart County Jail Captain David Lanzen ("Captain Lanzen"), Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore's (together "Sheriff Defendants") partial motion for judgment on the pleadings. (ECF 24). Based on the applicable law, facts, and arguments, Defendants' partial motion for judgment on the pleadings will be **GRANTED** in part and **DENIED** in part.

I. **RELEVANT BACKGROUND**

The facts recounted here come from Plaintiff's complaint and are accepted as true for purposes of this motion, with all reasonable inferences drawn in Plaintiff's favor. *See Calderon-Ramirez v. McCament*, 877 F.3d 272, 275 (7th Cir. 2017).

On November 24, 2021, Jeffrey Hawk ("Hawk") was incarcerated at the Elkhart County Jail ("ECJ"). (ECF 3 at 6). Hawk had been suffering from liver disease, Hepatitis C, asthma, and depression for years prior to his incarceration. (*Id.*). On December 8,

2021, Hawk was transported to Elkhart General Hospital for "acute onset of altered mental status." (*Id.* at 7). He remained there until December 17, 2021 when he was discharged and taken back to the medical unit at the ECJ. (*Id.*). A week later, on December 24, 2021, Hawk fell while in his cell and sustained an open wound to his right elbow. (*Id.*). Responding officers helped him back to bed. (*Id.*). Around 1:23 a.m. on December 25, 2021, Hawk fell while attempting to use the bathroom. (*Id.*). A few hours later, around 4:00 a.m., Hawk reported "paresthesia of his lower extremities and pain with movement" to ECJ officers and medical staff. (*Id.*). Around 9:06 p.m. on December 25, 2021, ECJ officers and medical staff noted that Hawk's mental status was declining and his arms were swelling. (*Id.*).

At 3:05 a.m. on December 26, 2021, Officer Chance Wilson ("Officer Wilson") was conducting a security patrol when he heard "a weird whistling sound that did not sound normal." (*Id.*). He discovered the noise was coming from Hawk's cell where, upon further investigation, Officer Wilson found Hawk unable to speak. (*Id.* at 8). Officer Wilson informed Nurse Emily who was unsuccessful in getting vitals from Hawk and who determined that Hawk was unresponsive, could not move, and his eyes were rolling in his head. (*Id.*). Hawk was unresponsive for an unknown amount of time before being discovered. (*Id.*) At 3:10 a.m., Hawk was noted by ECJ officers and medical staff to "have abdominal distention, capillary refill over five (5) seconds, pitting edema, agonal respirations, blood pressure of 90/50, and hypothermia." (*Id.*). An ambulance was called and Hawk was transported to Elkhart General Hospital. (*Id.*). Hawk suffered cardiac arrest en route to the hospital but was resuscitated. (*Id.*). At the hospital, Hawk

2

was found to be suffering from hypothermia with a temperature of eighty-two degrees and flaccid paralysis of all extremities. (*Id.*). Doctors at Elkhart General Hospital discovered that Hawk was suffering from a cervical cord injury that had been present for more than forty-eight hours and his labs showed evidence indicative of a prolonged amount of time in a stationary state. (*Id.*). Hawk developed septic shock, respiratory failure, and multiorgan failure due to cervical spinal cord compression and paralysis. (*Id.* at 9). Hawk died on December 31, 2021 because of complications arising from his falls on December 24 or 25, 2021. (*Id.*).

On December 18, 2023, Plaintiff Robert Friend, as special administrator of the estate of Jeffrey Hawk, filed suit in Elkhart Superior Court against Sheriff Defendants, Nurse Ronda, Emily Emery, W. Steinkraus, J. Foster, and Wellpath, LLC f/k/a Correct Care Solutions, LLC. (ECF 3). Defendant Elkhart County Sheriff removed the case to federal court on January 19, 2024. (ECF 1). On September 30, 2024, the Sheriff Defendants filed the instant partial motion for judgment on the pleadings with regard to the federal claims against them under Fed. R. Civ. P. 12(c). (ECF 24). The partial motion for judgment on the pleadings was fully briefed on October 28, 2024. On November 19, 2024, Wellpath, LLC filed a notice of bankruptcy. (ECF 31). On November 21, 2024, the Court ordered the action be stayed as to Defendants Wellpath, LLC, Emily Emery, J. Foster, Ronda, and W. Steinkraus but remain active as to the remaining defendants. On December 2, 2024, the Court amended the order to stay the case in its entirety. (ECF 33). On June 11, 2025, the Court ordered Plaintiff to file a status

3

report and stayed the case pending the Court's ruling on the partial motion for judgment on the pleadings. (ECF 41).

The Court will now analyze the instant Fed. R. Civ. P. 12(c) partial motion for judgment on the pleadings regarding the federal claims against Sheriff Defendants.

## II. STANDARD

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The court decides such a motion "under the same standard as a motion to dismiss under Rule 12(b)." *N. Ind. Gun & Outdoor Shows, Inc. v. S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998); *see also Pisciotta v. Old Nat'l Bancorp*, 499 F.3d 629, 633 (7th Cir. 2007). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A court deciding a motion for judgment on the pleadings may consider only "the matters presented in the pleadings" and must consider them in the light most favorable to the nonmovant. *Id.*

Courts grant a motion for judgment on the pleadings only if "it appears beyond doubt that the plaintiff cannot prove any facts that would support his claim for relief." *Craigs, Inc. v. Gen. Elec. Cap. Corp.*, 12 F.3d 686, 688 (7th Cir.1993). "Thus to succeed, the moving party must demonstrate that there are no material issues of fact to be resolved." *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452.

4

### III.    ANALYSIS

####    A.    42 U.S.C. § 1983

Plaintiff brings claims against Sheriff Defendants in their individual and official capacities under 42 U.S.C. § 1983 for violations of Hawk's Fourteenth Amendment right to due process and his Eighth Amendment right to be free from cruel and unusual punishment. (ECF 3 at 2). Plaintiff states that "ECSO and Sheriff Siegel failed to sufficiently train and supervise their deputies," and the ECSO and Sheriff Siegel had a "policy, custom, and/or practice, among other things, of ignoring requests for medical treatment for inmates that suffer from liver disease, hepatitis C, and medication requirements." (*Id.* at 6). He also alleges that the "policies, customs, and/or practices of ECSO and Sheriff Siegel" violated Hawk's civil rights and that "[t]he actions of Defendants constituted deliberate indifference to the medical needs of Plaintiff in violation of the cruel and unusual punishment clause of the Eight [*sic*] Amendment." (*Id.*).

Section 1983 allows prisoners to bring suits "against any person who caused a violation of the prisoner's Eighth Amendment rights while acting under color of state law." *Berry v. Peterman*, 604 F.3d 435, 439 (7th Cir. 2010). A plaintiff must show that a "defendant was personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995). An official "satisfies the personal responsibility requirement of section 1983 . . . if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent." *Id.* (quoting *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir. 1985)). In other words, a

5

plaintiff must establish a causal connection or affirmative link between the official sued and the action complained about. *Id.*

The Court will first address the Section 1983 claims against Sheriff Defendants in their individual capacities and then turn to the Section 1983 claims against Sheriff Defendants in their official capacities.

### 1. Individual Capacities[1]

Plaintiff brings claims against Sheriff Defendants in their individual capacities for violations of the Eighth and Fourteenth Amendment. "The Eighth Amendment safeguards the prisoner against a lack of medical care that 'may result in pain and suffering which no one suggests would serve any penological purpose.'" *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir.2009) (quoting *Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). The Supreme Court has held that a "prison official violates the Eighth Amendment only when two requirements are met." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The first is that the deprivation alleged must be "objectively, sufficiently serious," and the second is that the prison official "must have a 'sufficiently culpable state of mind.'" *Id.* (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). A sufficiently serious medical condition is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a

---

[1] Claims against Defendant Elkhart County Sheriff's Office will be addressed only in the section discussing claims against Sheriff Defendants in their official capacities because the ECSO itself is an official office and therefore cannot be sued in an individual capacity. Sheriff Siegel, however, can be sued in his individual capacity and the claims against him will be addressed accordingly.

6

lay person would perceive the need for a doctor's attention." *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005).

As for the second requirement, "[a] prison official acts with a sufficiently culpable state of mind when he knows of a substantial risk of harm to an inmate and either acts or fails to act in disregard of that risk." *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011). The required mental state is "something akin to recklessness," and "is more than negligence and approaches intentional wrongdoing." *Id.*; *Collignon v. Milwaukee Cnty.*, 163 F.3d 982, 988 (7th Cir. 1998). Further, "[D]eliberate indifference may be found where an official knows about unconstitutional conduct and facilitates, approves, condones, or "turn[s] a blind eye" to it." *Perez v. Fenoglio,* 792 F.3d 768, 781 (7th Cir. 2015) (quoting *Vance v. Peters,* 97 F.3d 987, 992–93 (7th Cir.1996)). The Fourteenth Amendment analysis is the same as the Eighth Amendment analysis. *Cavalieri v. Shepard*, 321 F.3d 616, 620 (7th Cir. 2003).

Here, Plaintiff alleges that Hawk sustained significant injuries because of his falls and required serious medical treatment. (ECF 3 at 9). He alleges that Hawk told Sheriff Defendants about the paresthesia of his legs, the swelling of his arms, and the pain he was experiencing. (*Id.* at 7). Rather than administering medical treatment or calling an ambulance, Defendants allegedly left Hawk "in a down stationary position for a prolonged amount of time before transferring him to a hospital" thus failing to "adequately monitor and treat" his medical condition. (*Id.* at 9). Plaintiff says that

> [d]espite having repeated warnings of [Hawk] suffering from an emergency medical condition that required immediate hospitalization starting at the latest on December 25, 2021, at 4:00 a.m., Defendants turned

7

> a blind eye and acted with deliberate indifference to [Hawk's] condition. When Defendants found [Hawk] in the early morning hours of December 26, 2021, almost twenty-four hours later, he was already hypothermic, paralyzed, and minimally responsive.

(*Id.*). Plaintiff further alleges that Hawk ultimately "died as a result of complications from not obtaining adequate medical care and supervision after the falls." (ECF 3 at 9). One or both falls caused Hawk a serious cervical cord injury and "his labs displayed evidence indicative of a prolonged amount of time in a stationary state." (*Id.* at 8). At the very least, according to Plaintiff's allegations, Sheriff Defendants were aware of Hawk's paresthesia, limb swelling, and pain, all of which are symptoms obvious enough that "even a lay person would perceive the need for a doctor's attention." *Greeno*, 414 F.3d at 653. Thus, Plaintiff has successfully shown that the alleged constitutional deprivation was "objectively, sufficiently serious." *Farmer*, 511 U.S. at 834.

In addition to establishing that the alleged deprivation is sufficiently serious, Plaintiff must also show that the prison official acted with a "sufficiently culpable state of mind." *Id.* Plaintiff does not differentiate between the various defendants, but it is important to do so in analyzing the mens rea element of the Eighth Amendment claim. Sheriff Siegel and Captain David Lanzen together are the supervisory defendants while Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore together are the on-duty officer defendants.

### a.    Sheriff Siegel and Captain Lanzen

As mentioned above, Plaintiff is required to establish a causal connection or affirmative link between the official sued and the alleged constitutional violation.

*Gentry*, 65 F.3d at 561. The allegations pled by Plaintiff center around ECJ officers or medical staff. Plaintiff does state that the "ECSO and Sheriff Siegel were responsible for the training, control, and actions of its deputies," but this is a "naked assertion" without supporting facts and is therefore insufficient to support a plausible claim. (ECF 3 at 6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 557 (2007). Further, Plaintiff does not allege that either man was aware of Hawk's medical issues, directed that medical care be withheld from Hawk, or otherwise interfered with the administration of medical care to Hawk. Sheriff Siegel and Captain Lanzen cannot be held liable on a theory of supervisory authority alone. *See Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009). Plaintiff failed to allege facts connecting either Sheriff Siegel or Captain Lanzen to the situation. Thus, under both the Eighth and Fourteenth Amendment standard, Plaintiff has failed to state a deliberate indifference claim against Sheriff Siegel and Captain Lanzen in their individual capacities. Based on the complaint, Sheriff Siegel and Captain Lanzen are entitled to judgment as a matter of law and Defendants' partial motion for judgment on the pleadings is **GRANTED** as to the deliberate indifference claims against them in their individual capacities. *Unite Here Loc. 1*, 862 F.3d at 595.

        **b.    On-Duty Officers: Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore**

While Plaintiff does not allege facts connecting Sheriff Siegel or Captain Lanzen to the alleged inadequate medical attention provided to Hawk, Plaintiff does plead sufficient facts to plausibly state a claim against the on-duty officers. According to Plaintiff, Officers Jones, Michaelson, Wilson, and Moore were all on-duty during the

9

time of Hawk's serious need for medical attention and they all left Hawk in a "down stationary position" before transferring him to a hospital. (ECF 3 at 2, 3, 9). On December 25, 2021 at 4:00 a.m., Hawk told jail officers and medical staff that he was experiencing "paresthesia of his lower extremities and pain with movement." (*Id.* at 7). Jail officers and medical staff were aware of both falls Hawk experienced in the prior days, yet even after his arms began to swell and he began to demonstrate altered mental status, on-duty officers did not call an ambulance or provide medical attention. (*Id.*). By the time Hawk was transported to Elkhart General Hospital, nearly 24 hours had passed and "Mr. Hawk's condition deteriorated to an untreatable level." (ECF 27 at 10). These allegations indicate that the on-duty officers might have been aware that Hawk's condition was worsening and failed to act in disregard of that risk. *Arnett,* 658 F.3d at 751.

Sheriff Defendants argue that Plaintiff fails to state a plausible claim because "[o]fficers are entitled to rely on the expertise of medical personnel for inmate care if they don't interfere with the medical treatment or withhold relevant information from medical personnel." (ECF 29 at 5). They further argue that the Sheriff Defendants relied on the guidance of medical personnel in responding to Hawk's medical emergency. Plaintiff alleges that jail officers responded to Hawk's falls, returned him to bed, and merely noted injuries caused by at least one of the falls. (ECF 3 at 7). Plaintiff also alleges that Hawk reported his worsening condition to jail officers and medical staff, including the emergent symptom of limb swelling. (*Id.*). Based on the facts alleged, it is unclear how much involvement jail officers had or did not have in Hawk's treatment

10

and whether the on-duty officers did, in fact, rely on the guidance of medical personnel in responding to Hawk's condition. It is possible and plausible that Plaintiff will be unable to support his factual allegations with admissible evidence or that Sheriff Defendants properly relied on the medical advice of the other defendants. It is also possible and plausible, on the other hand, that Sheriff Defendants ignored Hawk's plight and intentionally delayed Hawk's access to medical care, which is sufficient to support a finding of deliberate indifference. *Arnett v. Webster*, 658 F.3d 742, 753 (7th Cir. 2011). Either way, these and other questions will need to be explored through discovery. *Id.* at 754.

At this stage of the proceedings, Sheriff Defendants cannot show that there are no material issues of fact to be resolved regarding the on-duty officers' response to Hawk. Therefore, Sheriff Defendants' partial motion for judgment on the pleadings is **DENIED** as to the deliberate indifference claims against Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore in their individual capacities. *Unite Here Loc. 1*, 862 F.3d at 595.

### 2. Official Capacities

Plaintiff also brings his claims against Sheriff Defendants in their official capacities. Sheriff Defendants argue that "the claim against the Sheriff in his official capacity is a claim against the Office of Sheriff of Elkhart County, Indiana, or the Elkhart County Sheriff's Office." (ECF 25 at 8). They continue, saying that "[a]ny claim against the other individual Sheriff Defendants in their official capacity is duplicative of the official capacity claim against the Sheriff" and "[t]he claim against the Sheriff in his

11

official capacity is the *Monell* claim alleged in Plaintiff's Complaint." (*Id.*). Sheriff Defendants are correct that the claims against sheriffs in their official capacities are claims against the Sheriff's Office itself. *Hafer v. Melo*, 502 U.S. 21, 25 (1991).

A plaintiff can sue local governments under Section 1983 when an official policy of that local government inflicts the injury that the government as an entity is allegedly responsible. *Monell v. Dep't of Soc. Services of City of New York*, 436 U.S. 658, 694 (1978). Under Section 1983, a local government may be liable for monetary damages if the plaintiff can show that the unconstitutional act complained of is caused by: "(1) an official policy adopted and promulgated by its officers; (2) a governmental practice or custom that, although not officially authorized, is widespread and well settled; or (3) an official with final policy-making authority." *Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 303 (7th Cir. 2010). It is unclear "how frequently conduct must occur to impose *Monell* liability, 'except that it must be more than one instance.'" *Thomas*, 604 F.3d at 303 (citing *Cosby v. Ward,* 843 F.2d 967, 983 (7th Cir. 1988)).

Plaintiff argues that the "ECSO and Sheriff Siegel had a policy, custom, and/or practice, among other things, of ignoring requests for medical treatment for inmates that suffer from liver disease, hepatitis C, and medication requirements." (ECF 3 at 6). Plaintiff then relies on the absence of a policy, an approach that the Seventh Circuit called "more confusing than useful," to show there was a decision to act unconstitutionally. (ECF 27 at 12); *Calhoun v. Ramsey,* 408 F.3d 375, 380 (7th Cir. 2005). Sheriff Defendants, on the other hand, argue that Plaintiff's factual allegations do not plausibly suggest an entitlement to relief because "there are no facts supporting an

12

allegation of express policy nor an allegation that the constitutional injury was caused by a person with final policymaking authority." (ECF 25 at 14). They also argue that the complaint "does not set forth facts to support a widespread practice to deny medical care to detainees." (*Id.*).

Sheriff Defendants are correct that Plaintiff does not plead enough facts to support a claim that there was an express policy of denying medical care to detainees or that the alleged injuries were caused by a person with final policymaking authority. Plaintiff also fails to allege facts suggesting that the lack of medical care or insufficient medical attention was experienced by another inmate. Rather, Plaintiff relies on Hawk's individualized experience, without evidence or allegations of other constitutional violations to support his *Monell* claim, which is not enough. *Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 240 (7th Cir. 2021) (the Seventh Circuit has "repeatedly rejected *Monell* claims that rest on the plaintiff's individualized experience without evidence of other constitutional violations.").

In rare circumstances, it is possible for a single violation to suffice for "failure-to-train" liability, as is alleged here, "where a violation occurs and the plaintiff asserts a recurring, obvious risk." *Flores v. City of S. Bend,* 997 F.3d 725, 731 (7th Cir. 2021). "To establish single-incident liability, a plaintiff must prove that municipal policymakers know that its employees will confront a given situation and not train for it, and the need for training must be obvious without consideration of prior violations." *Id.* at 734-35 (internal citations omitted). The Seventh Circuit has made it clear that the single-incident theory is reserved only for narrow circumstances "when a municipality fails to

13

train its employees, who 'have no knowledge at all of the constitutional limits' that govern their conduct in situations they are certain to encounter." *Id.* at 735 (citing *Connick v. Thompson*, 563 U.S. 51, 64 (2011)). "Only where a failure to train reflects a "deliberate" or "conscious" choice by a municipality. . . can a city be liable for such a failure under § 1983." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989).

Plaintiff has not shown that the policymakers knew that its employees would confront a given situation and not train for it here. *Flores,* 997 F.3d at 731. Nor has he alleged facts to support an allegation that the Elkhart County Sheriff's Office employees had "no knowledge at all" of the constitutional limits that govern their conduct or that the failure to train Sheriff Defendants was the result of a deliberate or conscious choice. *Id.* at 735; *Canton*, 489 U.S. at 389. Even if Plaintiff were to argue that Sheriff Defendants were not trained enough, it is not enough to show that an injury could have been avoided if a specific officer received more or even better training "sufficient to equip him to avoid the particular injury-causing conduct." *Connick,* 563 U.S. at 68. To hold otherwise would allow liability to attach to municipalities under a lesser standard of fault and causation, resulting in "*de facto respondeat superior* liability, a result rejected in *Monell.*" *Canton*, 489 U.S. at 379.

Even taking all facts alleged by Plaintiff as true and drawing all inferences in his favor, Plaintiff does not allege facts to support one of the three available routes to assert a *Monnell* claim against Sheriff Siegel or the ECSO to support failure to train liability. Plaintiff merely formulaically recites the elements and makes naked assertions without supporting facts, which is inadequate to support a plausible claim for relief. *Ashcroft v.*

14

*Iqbal*, 556 U.S. 662, 678 (2009). Sheriff Defendants are thus entitled to judgment as a matter of law and Defendants' partial motion for judgment on the pleadings is **GRANTED** as to the *Monell* claim against them in their official capacities.

**B.    ADA and Rehabilitation Act**

Plaintiff also brings claims against Sheriff Defendants under § 202 of the Americans with Disability Act, 42 U.S.C. § 12132 ("ADA") and § 504 of the Rehabilitation Act ("RHA"), 29 U.S.C. § 794. Plaintiff alleges that "Defendants were at all times relevant responsible for accommodating the needs of disabled prisoners remanded to the Elkhart County Jail," which receives federal funding. (ECF 3 at 5). He continues, arguing that "Defendants turned a blind eye to the above-described discrimination, and acts and omissions, and caused Plaintiff, Jeffrey Hawk, to suffer serious personal injuries and death." (*Id.* at 10).

"[T]he relevant provisions of the Rehabilitation Act and its regulations are 'materially identical' to their ADA counterparts" so courts "construe and apply them in a consistent manner." *Steimel v. Wernert*, 823 F.3d 902, 909 (7th Cir. 2016) (citing *Radaszewski ex rel. Radaszewski v. Maram*, 383 F.3d 599, 607 (7th Cir.2004)). Disability discrimination under the ADA and RHA can be established in three ways "(1) the defendant intentionally acted on the basis of the disability, (2) the defendant refused to provide a reasonable modification, or (3) the defendant's rule disproportionally impacts disabled people." *Washington v. Ind. High Sch. Athletic Ass'n, Inc.*, 181 F.3d 840, 847 (7th Cir. 1999). All three require proof of causation. *Wisconsin Cmty. Servs., Inc. v. City of Milwaukee*, 465 F.3d 737, 752 (7th Cir. 2006). A claim under either the ADA or RHA

15

cannot be brought against individual employees. *See Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). Any claim under these statutes is a claim against the agency itself. *Id.*

In alleging that Sheriff Defendants denied Hawk medical treatment because of his disabilities, it appears that Plaintiff is bringing claims under the first route, that the "defendant intentionally acted on the basis of the disability." *Washington, Inc.*, 181 F.3d at 847. A disability is defined in the ADA as "a physical or mental impairment that substantially limits one or more major life activities of such individual." To successfully bring this claim, Plaintiff must show "(1) he is a qualified individual with a disability; (2) he was denied the benefits of the services, programs, or activities of a public entity, or otherwise subjected to discrimination by such an entity; and (3) the denial or discrimination was by reason of his disability." *Moore v. W. Illinois Corr. Ctr.*, 89 F.4th 582, 594 (7th Cir. 2023).

To recover damages, a plaintiff "must identify intentional conduct (and not mere negligence) by a named defendant." *Id.* at 595. A plaintiff can show intentional discrimination by proving deliberate indifference, which requires both "(1) knowledge that a harm to a federally protected right is substantially likely, and (2) a failure to act upon that likelihood." *Id.* (citing *Lacy v. Cook Cnty., Illinois*, 897 F.3d 847, 863 (7th Cir. 2018)). In other words, a plaintiff "must prove that the indifference was a 'deliberate choice' by defendants. *Lange v. City of Oconto*, 28 F.4th 825, 841 (7th Cir. 2022) (citing *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 263 (3d Cir. 2013)).

Plaintiff states that Hawk "suffered from liver disease, Hepatitis C, asthma, and depression" and that these conditions caused Hawk to suffer from medical complications. (ECF 3 at 6). Taking Plaintiff's allegations as true and drawing all reasonable inferences in his favor, the Court will assume that Hawk did qualify as disabled under the ADA and RHA. *Calderon-Ramirez*, 877 F.3d at 275. Regardless, as noted by Sheriff Defendants, Plaintiff's ADA and RHA claims fail on the third prong because the complaint "does not allege facts suggesting Hawk was discriminated against due to a disability; instead, it centers on claims of inadequate medical care." (ECF 25 at 17). The AHA and RHA are not "violated by a prison[] simply failing to attend to the medical needs of its disabled prisoners." *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Plaintiff is alleging incompetent treatment of Hawk's disabilities but the "ADA does not create a remedy for medical malpractice." *Id.* In fact, "[a] claim for inadequate medical treatment is improper under the ADA." *Resel v. Fox*, 26 F. App'x 572, 577 (7th Cir. 2001). Plaintiff is trying to replead his Eighth Amendment deliberate indifference claim under the ADA and RHA, which are inappropriate federal statutes for such a claim. *See Perrey v. Donahue*, Cause No. 3:06-CV-617, 2007 WL 4277621, at * 4 (N.D. Ind. Dec. 3, 2007). Plaintiff's deliberate indifference claim against the ECSO has already been addressed above.

Sheriff Defendants have shown here that there are no material issues of fact to be resolved and thus Plaintiff cannot prove any facts that would support his claim for relief under the ADA or RHA. *N. Indiana Gun & Outdoor Shows, Inc.*, 163 F.3d at 452; *Craigs,* 12 F.3d at 688. Therefore, Sheriff Defendants are entitled to judgment as a matter

of law and Defendants' partial motion for judgment on the pleadings is **GRANTED** as to the ADA and RHA claims.

IV. **CONCLUSION**

For the reasons discussed above, Sheriff Defendants' motion for judgment on the pleadings is **GRANTED** as to the Section 1983 claims against Sheriff Siegel, Captain Lanzen, and the ECSO, and the ADA and RHA claims. (ECF 24). Sheriff Defendants' motion for judgment on the pleadings is **DENIED** as to the Section 1983 claims against Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore in their individual capacities. (ECF 24). The only claims that remain in this case are thus the Section 1983 claims against Officer Amanda Jones, Corporal Lance Michaelson, Officer Chance Wilson, and Officer Alexzander Moore in their individual capacities and the claims against Wellpath LLC, Ronda, Emily Emery, W. Steinkraus, and J. Foster.

SO ORDERED on August 20, 2025.

                                                        /s/*Cristal C. Brisco*  
                                                        CRISTAL C. BRISCO, JUDGE  
                                                        UNITED STATES DISTRICT COURT